**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**BISRAT MEKURIA,**

      **Plaintiff,**

        **v.**                              **Civil Action No. 10-1325 (JEB)**

**BANK OF AMERICA,**

      **Defendant.**

**MEMORANDUM OPINION**

Plaintiff Bisrat Mekuria, a black male of Ethiopian descent, was a long-time customer of Defendant Bank of America. Following a dispute over a series of deposits Plaintiff made with the Bank in May and June 2009, the Bank elected to close his accounts. Without providing any explanation for why he believes the Bank's actions were racially motivated, Plaintiff has nonetheless brought this suit for racial discrimination, as well as two ancillary state common-law claims. Because of the dearth of factual support in Plaintiff's Amended Complaint, the Court must dismiss his suit.

**I.**      **Factual Background**

According to his Amended Complaint, Plaintiff is the owner of a business – the Family Food Market – in the District of Columbia. <u>See</u> Am. Compl., ¶ 4. For approximately five years, he maintained a number of bank accounts for his business with Defendant Bank of America. <u>Id.</u>, ¶¶ 7, 12. He alleges that in May 2009, he deposited a check into one of his accounts, but that the Bank refused to credit his account until he verified the check in person. <u>Id.</u>, ¶ 8. Plaintiff further alleges that on June 3 and 29, 2009, he made deposits that included checks in the amounts of $1,651 and $2,000. <u>Id.</u>, ¶¶ 9, 10. Although he received computer-generated receipts for each of

1

these deposits, id., the Bank later notified Plaintiff that "'deposit corrections' had been made on both deposits." Id., ¶ 11. The Bank advised him that "the $1,651.00 check . . . was not 'enclosed' with the June 3 deposit," and that there was "an 'error in addition'" with respect to the June 29 deposit. Id. Plaintiff alleges that "to date, [the Bank] has refused to credit him with those deposits." Id.

The Bank then notified Plaintiff on July 16, 2009, that it had "'elect[ed] to close' all five of his business accounts." Id., ¶ 12. Plaintiff alleges that the Bank "refused to immediately release any funds owned by Mekuria and required for the continued operation of his small family business. BOA proffered no explanation of [the] basis for the closing of Mr. Mekuria's accounts and referred him to BOA's 'Risk Identification Support Center.'" Id. On July 31 and September 2, 2009, the Bank sent Plaintiff cashier's checks in the amounts of $27,044.20 and $1,678.41, respectively, "representing the fund balance of his accounts." Id., ¶ 17.

On August 6, 2010, Plaintiff filed suit against the Bank, asserting claims of racial discrimination under 42 U.S.C. § 1981 and the District of Columbia Human Rights Act, breach of contract, and breach of the implied covenant of good faith and fair dealing. ECF No. 1. On December 30, 2010, Bank of America moved to dismiss for failure to state a claim. ECF No. 5. A day after filing his Opposition to the Bank's Motion, Plaintiff moved for leave to file an Amended Complaint, which the Court granted on April 14, 2011. ECF Nos. 8, 9, 12. Plaintiff's Amended Complaint contains three counts: racial discrimination under § 1981 (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). The Bank has again moved to dismiss under Rule 12(b)(6). The Court now considers this Motion.[1]

---

[1] The Court has reviewed Plaintiff's Amended Complaint, Defendant's Motion to Dismiss, Plaintiff's Opposition, and Defendant's Reply.

## II.    Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

**III.    Analysis**

In Count I of his Amended Complaint, Plaintiff alleges that, in refusing to credit his accounts in the amounts of the disputed deposits and in summarily closing his accounts, the Bank "denied [him] the contractual rights and privileges secured under the Civil Rights Act because of his race."  Id., ¶ 21.  In Count II, he alleges that "by withholding credit of deposits duly presented, terminating his contract[,] and denying him access to cleared deposits held in trust," the Bank breached its customer contract with him "because of his race." Id., ¶ 26.  In Count III, he alleges that these actions similarly constitute a breach of the implied covenant of good faith and fair dealing owed to him by the Bank.  Id., ¶ 32.

The Court will address Plaintiff's federal and state common-law claims in turn.

A.    Discrimination Claim

Section 1981, previously § 1 of the Civil Rights Act of 1866, 14 Stat. 27, as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, prohibits private parties from engaging in racial discrimination in the making and enforcing – including the performance, modification, and termination – of contracts.  42 U.S.C. § 1981.   This includes contracts between individuals and commercial entities such as banks.  See Banks v. Bank of America, N.A., 505 F. Supp. 2d 159 (D.D.C. 2007).

To state a claim under § 1981, Plaintiff must identify first, "an impaired 'contractual relationship,' § 1981(b), under which [he] has rights," followed by "injuries flowing from a racially motivated breach" of that contractual relationship.  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 480 (2006).  In other words, "Section 1981 offers relief when . . . racial discrimination impairs an existing contractual relationship."  Id. at 476.  Section 1981 "can be violated only by purposeful discrimination."  General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 389 (1982).

Defendant here does "no[t] dispute that a written contract existed between the parties." Mot. at 13. The Bank further does not argue that Plaintiff has failed to adequately plead the first prong of his § 1981 claim – namely, to identify "an impaired 'contractual relationship' . . . under which [he] has rights," <u>Domino's Pizza</u>, 546 U.S. at 476. In seeking dismissal of Count I under Rule 12(b)(6), what the Bank does argue is that "Plaintiff's inferences of discrimination are unsupported by any plausible factual allegations and cannot be sustained." Mot. at 7. The Court agrees.

To survive Defendant's Motion to Dismiss, Plaintiff need not establish a *prima facie* case of discrimination under the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 (2002). His Complaint, however, must comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" As set forth in Section II, *supra*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570). Although "detailed factual allegations" are not necessary at this stage, <u>Twombly</u>, 550 U.S. at 555, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A complaint that offers only "'labels and conclusions'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." <u>Id.</u> (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Id.</u> at 1950.

Although different courts in this district have applied slightly different tests to determine whether a plaintiff has alleged sufficient facts, in the wake of Twombly and Iqbal, to sustain a § 1981 discrimination claim at the pleading stage, Plaintiff must, at a minimum, allege enough facts in support of discrimination to "nudge[ his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. See, e.g., Brown v. Children's National Medical Center, 773 F. Supp. 2d 125, 135 (D.D.C. 2011) ("To state a claim under Section 1981 a plaintiff . . . must allege 'some facts that demonstrate that race was the reason for the defendant's actions.'") (quoting Bray v. RHT, Inc., 748 F. Supp. 3, 5 (D.D.C. 1990)); Ndondji v. Interpark Inc., 768 F. Supp. 2d 263, 274 (D.D.C. 2011) (finding plaintiff's "occasional reference to his race in his amended complaint is also insufficient to make out a section 1981 action"); Mesumbe v. Howard University, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) ("To plead intentional discrimination, 'plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions.'") (quoting Bray, 748 F. Supp. at 5), summarily aff'd, No. 10-7067, 2010 WL 4340401 (D.C. Cir. 2010); Middlebrooks v. Godwin Corp, 722 F. Supp. 2d 82, 88 (D.D.C. 2010) (dismissing § 1981 claim where "only suggestion that plaintiff's race or color played any role in her interactions with [defendants] are [her] conclusory statements that she was 'terminated . . . based on [her] race' and 'color'" and "none of the factual allegations in plaintiff's complaint suggest a racially discriminatory motive for defendants' treatment of plaintiff"), aff'd, No. 10-7089, 2011 WL 3207957 (D.C. Cir. 2011). This he has not done.

The only allegations in Plaintiff's Amended Complaint that relate to any potentially racially discriminatory conduct on the part of the Bank are as follows:

- "Upon information and belief, the summary closing and refusal to timely release funds entrusted to BOA was the result of unlawful profiling by BOA because of Mekuria's national origin, race and color." Am. Compl., ¶ 14.

- "Because of the facially baseless reasons for reversing the June deposits, defendant's sudden closing of all five of his accounts, its refusal to provide him access to any of his own funds, its failure to provide Mr. Mekuria with any explanation, coupled with the fact that Mr. Mekuria had recently been at the bank protesting defendant's treatment of him, and its referral to 'risk identification,' Mr. Mekuria was targeted for 'suspicious activity' solely because of his race and nationality." Id., ¶ 16.

These allegations are nothing more than legal conclusions devoid of any factual support; as a result, they do not meet the pleading standard required under Iqbal and Twombly.

Plaintiff has simply failed to plead a single fact to suggest that the Bank or any of its employees discriminated against him based on his race. He has not, for example, alleged that any of the tellers at the Bank made any negative comments to him or treated him in a hostile or inappropriate manner while he attempted to make his deposits or while he challenged the Bank's decision not to credit the disputed funds to his account. Cf. Banks, 505 F. Supp. 2d at 162 (denying summary judgment for bank where plaintiff alleged head teller stated he "did not look like he owned the business" from whose account he attempted to make withdrawal). Neither has he even alleged, let alone pled, any facts to suggest that white customers of the Bank are treated any differently. See Mesumbe, 706 F. Supp. 2d at 92-93 (dismissing § 1981 claim where plaintiff "makes a conclusory allegation that similarly situated students of different . . . race[s were] treated differently and more favorably [without alleging] that this disparate treatment was racially motivated," and where "none of the supporting facts Plaintiff includes in the Complaint suggest a racially discriminatory motive"). Based on the facts pled in Plaintiff's complaint, he could just have easily alleged he was discriminated against based on any other visible attribute, such as his age or gender.

Indeed, the facts Plaintiff does plead support the opposite inference: that Plaintiff's physical appearance was not the cause of the Bank's refusal to credit him with the disputed deposits and decision to close his accounts. For instance, Plaintiff alleges that "[u]p until May of 2009, [he] had had no issues involving his deposits" and that this disputed deposit was credited to his account when he "verified" it "in person." Am. Compl., ¶ 8.

At the end of the day, Plaintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two. Such supposition is not enough. As Plaintiff has failed to allege the facts necessary to support a claim of racial discrimination in violation of § 1981, Count I will be dismissed.

B.      State Common-Law Claims

Plaintiff asserts two additional non-federal causes of action – namely, breach of contract and breach of the implied covenant of good faith and fair dealing under District of Columbia common law – and requests that this Court exercise its pendent jurisdiction over them. See Am. Compl., ¶ 2. The Court declines to do so. Instead, the Court will dismiss those claims without prejudice, allowing Plaintiff to pursue them, if he so wishes, in the appropriate local court.

Federal district courts are given supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), quoted in Shekoyan v. Sibley Int.l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise pendent

jurisdiction over state claims, federal courts should consider "judicial economy, convenience and fairness to litigants." Id. Nonetheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here the factors weigh against retention of the case. Plaintiff's only federal claim is being dismissed. This case has not progressed in federal court past Defendant's Motion to Dismiss. Indeed, Defendant has not yet even filed its answer, and the Court has developed familiarity with neither the parties nor the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system.") (internal citation omitted). The Court therefore will dismiss those claims without prejudice.

**IV.    Conclusion**

An Order accompanying this Memorandum Opinion will dismiss Count I with prejudice and Counts II and III without prejudice.


**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 23, 2011